**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| DAVID WILLIAMS, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. H-11-530 |
| § | |
| ALLSTATE FIRE AND CASUALTY § | |
| INSURANCE CO., *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

This is one of the many insurance cases filed in or removed to the Southern District of Texas after Hurricane Ike. The plaintiffs, David and Donnette Williams, sued their insurer, Allstate Fire and Casualty Insurance Company; the insurance adjusting firm Allstate retained to investigate and adjust their claim, Pilot Catastrophe Services, Inc.; and the individual adjuster assigned to the claim, David Drozek. The complaint asserted causes of action for breach of contract, breach of the duty of good faith and fair dealing, fraud, conspiracy to commit fraud, and violations of the Texas Insurance Code. All defendants have moved for summary judgment, arguing that there is no evidence to support the claims for fraud and conspiracy to commit fraud and that the other claims are time-barred. (Docket Entry Nos. 31, 35 & 55.) The defendants have also moved to dismiss the claims for fraud and conspiracy to commit fraud under Federal Rule of Civil Procedure 12(b)(6), arguing that the plaintiffs have not pleaded these claims with the specificity Rule 9(b) requires. (*Id.*)

The plaintiffs have responded to Pilot's and Drozek's motions, (Docket Entry Nos. 42 & 57), and Pilot and Drozek have replied, (Docket Entry Nos. 46 & 59).[1]

Based on the pleadings; the motions, responses, and replies; the record; and the relevant law, this court grants the motions for summary judgment on the breach of contract claims and the nonfraud extracontractual claims and grants the motion to dismiss the fraud and related conspiracy claims. The plaintiffs may file an amended complaint no later than **June 29, 2012.** The reasons for these rulings are explained below.

**I.     Background[2]**

In September 2008, the plaintiffs submitted a claim under their homeowner's insurance policy (the "Policy") to Allstate for damage Hurricane Ike caused to their home. The plaintiffs allege that their claim sought the cost to repair structural, roof, and contents damage from water and wind. (Petition, ¶¶ 15, 16.) Allstate retained Pilot, which assigned Drozek to adjust the claim.

On October 24, 2008, Drozek met with David Williams to inspect the plaintiffs' home. David Williams accompanied Drozek on the inspection and pointed out the areas that had been damaged. According to Williams, that included "damage to the sheetrock, damage to the back fence, interior water damage throughout the interior of the house, water damage to the carpet, water damage to the upstairs game room, and water damage to the front door and surrounding area."

---

[1] The plaintiffs have not responded to Allstate's motion. Because the defendants' motions are substantially similar, the court will construe the plaintiffs' responses to Pilot's and Drozek's motions as a response to Allstate's motion.

[2] The background is drawn from the pleadings and the summary judgment evidence, which includes: (1) the homeowner's insurance policy Allstate issued to the plaintiffs; (2) the affidavit of John Dougherty, an Allstate senior claims service adjuster; (3) Allstate's claim-file notes; (4) the affidavit of David Williams; (5) the affidavit of Darrell Quinney, whose company the plaintiffs retained to assess the scope of damage to the home; (6) the affidavit of Peter Rabner, a project manager at Nelson Jones Engineering; (7) an estimate of the cost to repair the damage to the plaintiffs' home prepared by Loss Solutions; (8) a Nelson Jones report assessing the damage to the plaintiffs' home; and (9) Allstate's adjuster summary and claim summary reports.

(Docket Entry No. 42, at 2–3.) The plaintiffs assert that the storm caused a roof leak and that "[w]ater intrusion through the roof caused significant damage throughout the entire home, including, but not limited to, the home's ceilings, walls, insulation, and flooring," (Petition, ¶ 14), requiring them to replace the carpet "due to the large amount of water it had absorbed," (Docket Entry No. 42, at 3). According to the plaintiffs, Drozek's inspection was obviously inadequate because he only spent 30 to 45 minutes; did not go into the attic or on the roof; and made no substantive notes or provide any estimates. (*Id.*)

The parties agree that Drozek told Williams that the damage to the residence was so minor that the repair cost was less than the Policy deductible. According to Drozek, Williams then stated that he wanted to cancel his claim, and Drozek confirmed that the claim would be closed. (Docket Entry No. 31-3, at 3.) Williams disputes this: "to the best of [his] recollection," Williams does not "remember ever telling . . . Drozek to close [his] claim." (Docket Entry No. 57-4, at 2.)

Based on what the plaintiffs allege was a "substandard" inspection, Drozek wrote a report that the plaintiffs allege undervalued some of the damage and omitted other damage. (Petition, ¶ 17.) Allstate asserts that based on the information that Williams did not want to pursue the claim, it closed the claim file on November 16, 2008. (Docket Entry No. 31-2, at 3.) There was no written notification of the closing sent to the plaintiffs and Allstate made no payments on the claim. The plaintiffs did not communicate with the defendants about the claim between the October 2008 inspection and the December 2010 filing of the lawsuit.

On December 28, 2010, the plaintiffs sued Allstate, Pilot, and Drozek in state court, asserting causes of action for breach of contract, breach of the duty of good faith and fair dealing, fraud,

3

conspiracy to commit fraud, and violations of the Texas Insurance Code. The defendants timely removed to federal court.

In February and March of 2011, the plaintiffs had an inspection report done and a computerized estimate of repair costs prepared. The repair costs set out in that report are $86,206.05. (Docket Entry No. 57-5, at 7.) The Policy deductible amount is $5,000.00.

The defendants have moved for summary judgment on two grounds. First, the defendants argue that the breach of contract and the nonfraud extracontractual claims are time-barred because the plaintiffs sued after the limitations period specified in the Policy[3] and after the two-year period governing the nonfraud extracontractual claims had expired. According to the defendants, these causes of action accrued on November 16, 2008, when Allstate closed the plaintiffs' claim. The plaintiffs respond that a disputed issue material to determining when their causes of action accrued exists because Allstate did not notify them in writing that it had closed their claim. In the alternative, the plaintiffs contend that the discovery rule and the fraudulent-inducement doctrine deferred the accrual of their causes of action. The plaintiffs acknowledge, however, that after their September 2008 claim and Drozek's October 2008 "substandard" inspection, Allstate did not pay to repair the hurricane damage that the plaintiffs allege was both obvious and substantial. There was no communication between Allstate, Pilot, or Drozek and the plaintiffs between October 2008 and the filing of this suit.

Second, the defendants argue that there is no evidence to support the plaintiffs' fraud and conspiracy claims. The plaintiffs respond that the discrepancy between what Drozek appraised the damage to the home to be (less than the $5,000 Policy deductible) and the $86,206.05 estimate the

---

[3] The Policy stated that "[a]ny action against [Allstate] . . . must be commenced within two years and one day of the date the cause of action accrues." (Docket Entry No. 31-1, at 10.)

plaintiffs obtained from Loss Solutions, the independent damage appraiser they retained months later, precludes summary judgment on those claims.

In their summary judgment motions, the defendants have also moved to dismiss the fraud and related conspiracy claims under Rule 12(b)(6), arguing that the plaintiffs have not pleaded these claims with the specificity Rule 9(b) requires. The arguments reassert those made in the motions to dismiss. The plaintiffs have not responded to the arguments for dismissal reasserted in the summary judgment motions but have responded to the motions to dismiss, arguing that their state-court petition satisfies Rule 9(b).

The parties' arguments and responses are examined below.

## II.     The Legal Standards

### A.     Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the

lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### B.   Rule 12(b)(6)

A motion to dismiss for failure to plead with the particularity required by Rule 9(b) is properly raised in a Rule 12(b)(6) motion for dismissal for failure to state a claim. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 n.8 (5th Cir. 2009). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To

survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The federal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of cause of action will not do." *Id*. (internal quotation marks and citation omitted).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007)

("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

### III.  Discussion

#### A.  The Breach of Contract and Nonfraud Extracontractual Claims

"By establishing a reasonable time within which suit must be filed, limitations periods protect against stale claims and diminish the prospect that a case's resolution will be impaired by loss of evidence, death or disappearance of witnesses, fading memories, or disappearance of documents." *Sheppard v. Travelers Lloyds of Tex. Ins. Co.*, No. 14-08-00248-CV, 2009 WL 3294997, at *2 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).  Under Texas law, contract actions are typically governed by a four-year statute of limitations.  TEX. CIV. PRAC. & REM. CODE § 16.004(a).  Contractual provisions in insurance policies may limit the statutory limitations period. *Bazile v. Aetna Cas. & Sur. Co.*, 784 S.W.2d 73, 74 (Tex. App.—Houston [14th Dist.] 1989, writ dism'd).  Such provisions are "valid and enforceable" so long as they do not "create a limitations period shorter than two years," *Sheppard*, 2009 WL 3294997, at *2 (citing TEX. CIV. PRAC. & REM. CODE § 16.070), and are "routinely enforce[d]" by Texas courts, *Watson v. Allstate Tex. Lloyd's*, 224 F. App'x 335, 339 (5th Cir. 2007).

In this case, the Policy required the plaintiffs to sue Allstate within two years and one day after their causes of action accrued.  "As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003).  "[A] cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is

not discovered until later." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). "Under Texas law, a plaintiff's cause of action for bad-faith breach of a first-party insurance contract accrues at the time the insurer denies the insured's claim." *Knott*, 128 S.W.3d at 221; *see also Pena v. State Farm Lloyds*, 980 S.W.2d 949, 953 (Tex. App.—Corpus Christi 1998, no pet.) ("Limitations begin to run on an insurance policy when the loss is denied."). "The fact that damage may continue to occur for an extended period after denial does not prevent limitations from starting to run." *Knott*, 128 S.W.3d at 221.

When an insurer sends the insured a letter denying his claim, the insured's causes of action under the policy usually accrue on the date the letter is sent. *Watson*, 224 F. App'x at 339–40. But when, as here, there is no written denial of a claim, Texas courts have looked to the date the insurer closed the claim file. In *Kuzniar v. State Farm Lloyds*, 52 S.W.3d 759 (Tex. App.—San Antonio 2001, pet. denied) (en banc), the insureds filed a claim with State Farm in 1992 regarding a plumbing leak in their home. *Id.* at 760. State Farm opened a claim file and sent an adjuster to investigate the claim; in turn, the adjuster asked the insureds to hire a plumber to investigate the leak. *Id.* In January 1993, after neither State Farm nor the adjuster heard back from the insureds, State Farm closed the claim file. *Id.* The insureds sued in August 1996 alleging that State Farm wrongfully failed to pay their claim. *Id.* The insureds' policy contained a two-year limitations provision like the one in this case. The trial court granted summary judgment in State Farm's favor on limitations, and the court of appeals affirmed. Holding that the insureds' causes of action accrued in January 2003, the appellate court explained that "[t]he closing of the claim file was an objectively verifiable event that unambiguously demonstrated State Farm's intent not to pay the claim." *Id.*

9

The summary judgment evidence shows that Allstate closed the plaintiffs' claim file on November 16, 2008. The plaintiffs' causes of action under the Policy accrued on that date. Because the plaintiffs did not sue Allstate until December 28, 2010—more than two years and one day after Allstate closed the claim file—the breach of contract claim against Allstate is time-barred. Allstate's failure to send the plaintiffs a letter informing them that their claim had been denied or that the claim file had been closed does not compel a different result. "The absence of a written notice in [November 2008] containing the reasons for rejecting [the plaintiffs'] claim may or may not be a statutory violation." *Sheppard*, 2009 WL 3294997, at *3. But "[a]ccrual under the legal injury rule is a separate issue." *Id.* "[T]he failure to comply with a statutory duty has nothing to do with, and fails to vitiate, the [plaintiffs'] own responsibility to exercise diligence in pursuing their claim." *Kuzniar*, 52 S.W.3d at 760. Under *Kuzniar* and *Sheppard*, the date when Allstate closed the plaintiffs' claim file was an objectively verifiable event that demonstrated Allstate's intent not to pay their claim. Absent deferral of the accrual date, the plaintiffs' causes of action under the Policy accrued on November 16, 2008.

Other evidence also supports the conclusion that November 16, 2008 is the latest accrual date. Although the plaintiffs dispute that David Williams told Drozek on the date of the inspection, October 24, 2008, that Williams did not wish to pursue the claim and Drozek should close the claim file, the plaintiffs do not dispute that Drozek told Williams that the damage he found on his inspection was below the deductible, which would result in no payment. These undisputed facts show that as of the date of the inspection in October 2008, the plaintiffs knew that the inspection report would result in either no payment or one that was far below the cost to repair the extensive damage that they allege was obvious.

The plaintiffs argue that the accrual date should be deferred under the discovery rule and the fraudulent-concealment doctrine. The discovery rule "may defer accrual of a cause of action until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *Barker v. Eckman*, 213 S.W.3d 306, 311–12 (Tex. 2006). "In order for the discovery rule to apply, the nature of the injury must be inherently undiscoverable and the injury itself must be objectively verifiable." *Id.* at 312. "'An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence.'" *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313–14 (Tex. 2006) (quoting *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001)). Whether an injury is inherently undiscoverable "is decided on a categorical rather than case-specific basis." *Id.* at 314. This "approach means [courts] do not determine when a particular injury was actually discovered in any particular case, but rather whether that case is of the type to which the discovery rule applies." *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001).

In this case, the plaintiffs allege that "the injury was the misrepresentation of the extent and scope" of the damage to their home and the "wrongful denial" of their claim. (Docket Entry No. 42, at 11.) The alleged injury is not inherently undiscoverable because it is the type of injury that could have been discovered by the exercise of reasonable diligence. When, as here, the presence of extensive property damage is clear and the response from the insurance adjustor and insurer is a cursory inspection resulting in a report of either no damage or damage below the deductible, the homeowner knows, or clearly should know, that the injuries described as "misrepresentation of the extent and scope of the damage" and refusal to pay the costs of repairing that damage have

11

occurred.[4] The discovery rule does not apply to delay the limitations accrual date for the breach of contract and nonfraud extracontractual claims.

"Although similar in effect to the discovery rule, the fraudulent-concealment doctrine is an affirmative defense to limitations that resembles equitable estoppel." *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 228 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The doctrine "estops a defendant from relying on the defense of limitations if the defendant was under a duty to make a disclosure but fraudulently concealed the existence of a cause of action from the party to whom it belongs." *Id.* "Fraud vitiates whatever it touches, and a party will not be permitted to avail himself of the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations." *DiGrazia v. Old*, 900 S.W.2d 499, 502 (Tex. App.—Texarkana 1995, no writ). "To prove fraudulent concealment, the plaintiff must demonstrate that the defendant had (1) actual knowledge that a wrong occurred, (2) a duty to disclose the wrong, and (3) a fixed purpose to conceal the wrong." *Seureau*, 274 S.W.3d at 228.

In this case, there is no evidence from which a jury could infer that the defendants had "actual knowledge" of a "wrong" or had a "fixed purpose" to conceal the damage to the plaintiffs' home or the claim denial. To the contrary, the plaintiffs allege that Drozek affirmatively disclosed in October 2008 that the repair costs for the damage were below the deductible and therefore would not result in any claim payment. The plaintiffs allege that when this occurred, they knew that their home had been extensively damaged in the hurricane. The fraudulent-concealment doctrine does not defer accrual of the plaintiffs' breach of contract claim or the nonfraud extracontractual claims.

---

[4] Cases in which insurance adjusters misrepresent the extent and scope of hurricane damage to a home do not involve damage unascertainable during the inspection that manifests at a later date. This court's holding is limited to the category of cases defined by the specific injury the plaintiffs have alleged.

The breach of contract and the nonfraud extracontractual claims for breach of the duty of good faith and fair dealing and for violations of the Texas Insurance Code accrued no later than November 2008. Like the breach of contract claim, the nonfraud extracontractual claims are governed by a two-year statute of limitations. *See Knott*, 128 S.W.3d at 221. Because the plaintiffs did not sue until December 2010, the breach of contract and nonfraud extracontractual claims are time-barred. The defendants' motions for summary judgment on limitations are granted as to the breach of contract and nonfraud extracontractual claims.[5]

### B. The Fraud and Conspiracy Claims

"To state a claim of fraud by misrepresentation under Texas law, a plaintiff must sufficiently allege (1) a [material] misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). In addition, fraud claims must comply with the particularity requirements of Rule

---

[5] In their response to Drozek's summary judgment motion, the plaintiffs move for a continuance to conduct additional discovery "[i]n the unlikely event that the Court is inclined to grant" Drozek's motion. (Docket Entry No. 57, at 14.) The plaintiffs argue that they "have not yet had the opportunity to conduct most of the needed discovery in this matter" because "the parties had agreed to mediate this case." (*Id.* at 13.) The motion for a continuance of the summary judgment motion for further discovery is denied. The plaintiffs responded to Drozek's summary judgment motion on February 29, 2012. At that time, the February 24, 2012 deadline to complete discovery had passed. (Docket Entry No. 16, at 2.) Drozek's summary judgment motion raised the same limitations argument that Allstate and Pilot had raised when they moved for summary judgment in September 2011. The plaintiffs had approximately five months inbetween Allstate's and Pilot's motions and Drozek's motion in which to conduct the discovery they contend they needed to adequately respond to the defendants' limitations argument. Even if an agreement to mediate would defer the parties' obligations to conduct discovery pending mediation's outcome, the plaintiffs still had an adequate time to conduct discovery. In a substantially similar motion for a continuance filed in September 2011 in response to Allstate's and Pilot's summary judgment motions, the plaintiffs stated that mediation was scheduled for October 19, 2011. (Docket Entry No. 37, at 4.) The plaintiffs had ample time to conduct discovery from October 19, 2011 until February 24, 2012. The fact that, for an unrelated reason and *after* the initial discovery deadline had passed, this court extended the February 24, 2012 discovery cut-off deadline does not change the result. The plaintiffs have known the defendants' limitations argument since September 7, 2011 and had adequate time to conduct the necessary discovery before February 24, 2012.

9(b). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (internal quotation marks omitted). The plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (internal quotation marks omitted). "Although Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994). "The plaintiffs must set forth specific facts supporting an inference of fraud." *Id.*

The defendants argue that the plaintiffs did not plead their fraud and conspiracy claims with the particularity required by Rule 9(b). The court agrees. The "Fraud" section of the petition states:

> 46. Defendants Allstate, Pilot, and Drozek are liable to Plaintiffs for common law fraud.
>
> 47. Each and every one of the representations, as described above, concerned material facts for the reason that absent such representations, Plaintiffs would not have acted as they did, and which Defendants Allstate, Pilot, and Drozek knew were false or made recklessly without any knowledge of their truth as a positive assertion.
>
> 48. The statements were made with the intention that they should be acted upon by Plaintiffs, who in turn acted in reliance upon the statements, thereby causing Plaintiffs to suffer injury and constituting common law fraud.

(Petition, ¶¶ 46–48.) These allegations, even when read together with the complaint's remaining allegations, do not satisfy Rule 9(b). The plaintiffs have not sufficiently described the content of the alleged misrepresentations, identified their speaker, specified when and where the misrepresentations were made, or explained why the misrepresentations were fraudulent. The fact that the plaintiffs' responses to the summary judgment motions added detail to their fraud claims does not excuse the plaintiffs from filing a pleading that complies with the federal rules. The plaintiffs' claims for common-law fraud are insufficiently pleaded. The plaintiffs' conspiracy to commit fraud claims are derivative of their fraud claims. *Highland Crusader Offshore Partners, LP v. LifeCare Holdings Inc.*, 311 F. App'x 422, 428 (5th Cir. 2010) (unpublished) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)). Because the plaintiffs have failed to state a claim for fraud, they have also failed to state a claim for conspiracy to commit fraud. The conspiracy claims are dismissed, with leave to amend.[6]

## IV. Conclusion

The defendants' motions for summary judgment on the breach of contract and nonfraud extracontractual claims on the basis that they are time-barred are granted. The defendants' motions to dismiss the fraud and conspiracy to commit fraud claims are also granted, with leave to amend. All other pending motions are denied as moot. Because the plaintiffs' lead attorney is on maternity leave, the plaintiffs have until **June 29, 2012,** to amend their complaint to attempt to state viable fraud and conspiracy to commit fraud claims.

SIGNED on March 30, 2012, at Houston, Texas.

Lee H. Rosenthal

---

[6] In light of these rulings, there is no need to address the defendants' argument that they are entitled to summary judgment on the fraud and conspiracy to commit fraud claims because there is no evidence of fraud or the objections to David Williams's affidavit as incompetent summary judgment evidence.

                                                        _____
                                                                     Lee H. Rosenthal
                                                               United States District Judge